UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LEAD I JV, LP and FRIO LEAD I JVGP, LLC,

               Plaintiffs,                             **MEMORANDUM AND ORDER**
                                                       08-CV-0843 (DRH) (MLO)

         - against -

NORTH FORK BANK and NORTH FORK
BANK - WINCHESTER BRANCH,

               Defendants.
-------------------------------------------------------------X
NORTH FORK BANK,

               Third-Party Plaintiff,

         - against -

BRUCE RANSOM and LOTHIAN OIL, INC.,

               Third-Party Defendants.
-------------------------------------------------------------X
**A P P E A R A N C E S :**

Attorneys for Plaintiff:
The Cook Law Firm
5005 Riverway - Suite 210
Houston, Texas 77056
By: Damon G. Cook, Esq.

Nimkoff Rosenfeld & Schechter, LLP
One Pennsylvania Plaza - Suite 2424
New York, New York 10119
By: Robert J. Schechter, Esq.

Attorney for Defendants:
Lazer, Aptheker, Rosella & Yedid, P.C.
Melville Law Center
225 Old Country Road
Melville, New York. 11747-2712
By: Joseph C. Savino, Esq.

Attorney for Third-Party Defendant Lothian Oil, Inc.:
Haynes and Boone, LLP

1221 Avenue of the Americas - 26th Floor
New York, New York 10020-1089
By: April L. Neave, Esq.
    Kenneth J. Rubinstein, Esq.

**HURLEY, Senior District Judge:**

Presently pending before the Court is the motion by plaintiffs Lead I JV, LP

("Lead LP") and Frio Lead I JVGP, LLC ("Frio Lead") (collectively, "Plaintiffs") to remand this

case in its entirety to the New York State Supreme Court, Suffolk County. For the reasons that

follow, Plaintiffs' motion is granted to the extent the main action is remanded to state court.

Plaintiffs' motion is denied with regard to the third-party action which is transferred to the

United States District Court for the Western District of Texas, Midland Division, for referral to

the United States Bankruptcy Court for the Western District of Texas, Midland Division.

*BACKGROUND*

On May 15, 2007, Plaintiffs commenced this action by filing a Complaint against

defendants North Fork Bank and North Fork Bank – Winchester Branch (hereinafter collectively

referred to as "North Fork") in the Supreme Court of New York, Suffolk County (the "New York

action"). Plaintiffs assert claims for violations of N.Y. U.C.C. § 3-404, breach of contract, and

negligence as a result of the alleged unauthorized withdrawal of funds from Plaintiffs' North

Fork account. Thereafter, on June 19, 2007, defendant North Fork Bank filed a Third-Party

Complaint against third-party defendants Lothian Oil, Inc. ("Lothian") and Bruce Ransom,

Lothian's Chief Executive Officer ("Ransom"), asserting claims for, inter alia, conversion,

indemnification, and contribution should North Fork Bank be found liable to Plaintiffs in the

main action.

On June 13, 2007, prior to the filing of the Third-Party Complaint in the New

York action, Lothian filed a voluntary Chapter 11 petition under Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, Midland Division (the "Bankruptcy Court"). On October 19, 2007, North Fork filed a Proof of Claim in the Lothian bankruptcy and asserted, inter alia, a constructive trust on one or more of Lothian's assets, which were allegedly purchased with the funds at issue in the New York action. Thereafter, North Fork made a motion in the Bankruptcy Court to modify the automatic stay to permit North Fork to prosecute its third-party claims against Lothian in the New York action. This motion was granted by the Bankruptcy Court via "Agreed Order" on November 28, 2007. The Order further provides that North Fork cannot contest removal of the New York action nor can it contest transfer of the New York action to the Lothian bankruptcy case.

On February 28, 2008, Lothian filed a Notice of Removal of the New York action to the instant court pursuant to 28 U.S.C. §§ 1446 and 1452. Presently before the Court is Plaintiffs' motion to remand the entire action to state court. For the reasons stated below, Plaintiffs' motion is granted to the extent Plaintiffs' claims against North Fork are remanded to state court; it is denied with respect to the third-party action, which is transferred to the United States District Court for the Western District of Texas, Midland Division, for referral to Bankruptcy Court.

### DISCUSSION

Plaintiffs advance several arguments as to why this action should be remanded to state court. The Court will address Plaintiffs' arguments in turn.

## I.    The Timeliness of the Notice of Removal

Lothian's Notice of Removal states that it is being filed pursuant to 28 U.S.C. §§ 1446 and 1452.  Plaintiffs contend that the Notice was untimely under both sections.  For the reasons that follow, the Court finds Plaintiffs' arguments to be without merit.

### A.    Sections 1446 and 1452

28 U.S.C. § 1446 is entitled "Procedure for removal."  Thus, § 1446 sets forth the procedural requirements for removing an action to federal court.  However, in addition to complying with the removal procedures set forth in § 1446, a defendant, or third-party-defendant, must also demonstrate the presence of federal jurisdiction.  *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 2006 WL 1004725, at *3 (S.D.N.Y. Apr. 17, 2006).

28 U.S.C. § 1452 authorizes a district court to exercise jurisdiction over a bankruptcy case.  More specifically, § 1452 provides, in pertinent part, as follows:

> A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).  Section 1334 provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11,"[1] 28 U.S.C. § 1334(a), and "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," *id.* § 1334(b).  As discussed *infra* in the jurisdictional portion of this decision, Lothian contends that the Court has jurisdiction over the entire action as arising in

---

[1]  The Bankruptcy Code is found in title 11 of the United States Code.

or related to the Lothian bankruptcy.

**B.** *Under Both 28 U.S.C. § 1446 and Bankruptcy Rule 9027(a)(2), the Notice of Removal had to be Filed Within Thirty Days of Service of Process*

In arguing that the Notice of Removal was untimely, Plaintiffs rely on both §

1446(b) and Bankruptcy Rule 9027(a).  Section 1446(b) provides, in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

28 U.S.C. § 1446(b).  Similarly, Bankruptcy Rule 9027(a)(3) provides, in pertinent part:

> If a claim or cause of action is asserted in another court after the commencement of a case under the Code, a notice of removal may be filed with the clerk only within . . . 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed . . . .

Fed. R. Bankr. P. 9027(a)(3).[2]  Since the time period for removal set forth in § 1446(b) is

identical to that provided in Rule 9027(a)(3),[3] the Court need not decide which provision applies

to the instant case.[4]

---

[2]  Plaintiffs incorrectly rely on Bankruptcy Rule 9027(a)(2), which applies to cases where the "civil action [was] initiated before commencement of the case under the code." Fed. R. Bankr. P. 9027(a)(2).  Here, the third-party action against Lothian was filed on June 19, 2007, which was *after* Lothian's June 13, 2007 bankruptcy filing.  Thus, Bankruptcy Rule 9027(a)(2) is inapplicable.  Instead, subdivision (a)(3) which applies to cases where the "civil action [was] initiated after commencement of the case under the Code" is the relevant provision.

[3]  In fact, the advisory committee notes to Bankruptcy Rule 9027 provide that subdivision (a)(3) is derived from § 1446(b).  Fed. R. Bankr. P. 9027 adv. committee notes.

[4]  "Courts have split on whether 28 U.S.C. § 1446(b) (governing removals generally) or Bankruptcy Rule 9027 provides the appropriate time period for filing a notice of removal in cases related to a bankruptcy proceeding."  *Christo v. Padgett*, 223 F.3d 1324, 1331 n.6 (11th

Plaintiffs contend that the thirty-day time period for removal began to accrue upon Lothian's actual notice of the third-party claim filed against it, which Plaintiffs claim was on October 19, 2007, when North Fork filed a Proof of Claim against Lothian in the Bankruptcy Court and attached thereto a copy of North Fork Bank's Third-Party Complaint in the New York action. Because Lothian filed its Notice of Removal on February 28, 2008, more than thirty days after October 19, 2007, Plaintiffs argue that Lothian's Notice of Removal was untimely. Plaintiffs are mistaken.

Despite the language of 28 U.S.C. § 1446(b) indicating that the time period for removal accrues upon "service or otherwise, of a copy of the initial pleading," it is well-settled that the time to file a notice of removal under § 1446(b) is not triggered until service of the initial pleading has been properly effectuated. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 349-56 (1999). In *Murphy Bros.*, the Court found that since a court cannot exercise personal jurisdiction over a party named in a complaint until that party has been properly served, "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* at 350.

Here, Lothian was served with the third-party complaint on January 31, 2008, and filed its Notice of Removal less than thirty days later, on February 28, 2008. Thus, the Notice of Removal would appear timely under 28 U.S.C. § 1446(b), and presumably also under

Cir. 2000). The parties do not address this issue.

Bankruptcy Rule 9027(a)(3).[5]

That does not end the Court's inquiry, however, as the Court must also consider third-party defendant Ransom, who was served with the Third-Party Complaint in the New York action on both July 31, 2007 and December 12, 2007, more than thirty days prior to Lothian's filing of the Notice of Removal.[6] Thus, the question is when the thirty day period for removal begins to run where, as here, there are multiple third-party defendants who were not served at the same time. Plaintiffs do not address this issue. Lothian contends that the thirty day period begins to run when the last defendant is served. For the reasons set forth below, the Court agrees.

### C. *In a Case Involving Multiple Defendants Under § 1446(b), the Thirty Day Period Begins to Run from the Time the Last Defendant is Properly Served*

In actions involving multiple defendants, or in this case, multiple third-party defendants, the federal court are split as to whether the time for removal under § 1446(b) is determined by the date of service upon the first-served defendant (the "first-served rule") or the date of service upon the last defendant served (the "last-served defendant rule"). *See Piacente v. State Univ. of N.Y. at Buffalo*, 362 F. Supp. 2d 383, 385 (W.D.N.Y. 2004).[7] The issue has not

---

[5] There appears to be no reason why the cases interpreting § 1446(b) should not apply to Bankruptcy Rule 9027(a)(3), which contains identical language. In any event, no party has presented authority to the contrary.

[6] Ransom has not appeared in either the New York action or the instant federal proceeding.

[7] As a point of clarification, the Court notes that as used herein, the "last-served defendant" rule means the last-served defendant that has filed for removal, or as the *Piacente* court referred to as the "removing defendant" or "RD" rule. *See Piacente*, 362 F. Supp. 2d at 385.

yet been addressed by the Supreme Court or the Second Circuit. *Id.* at 385-86. However, the Supreme Court's finding in *Murphy Bros.* that the clock for removal does not begin until a defendant is properly served with process, although only involving a single defendant, suggests that the last-served defendant rule is the proper interpretation of § 1446. *See id.* at 387-389; *see also Glatzer v. Hanley*, 2007 WL 1334971, at *3 (S.D.N.Y. May 8, 2007). As stated by the Court in *Murphy Bros.*, "We read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.*, 526 U.S. at 347. Consequently, if a person becomes a party only upon service of process, it follows that a person may only be required to "engage in litigation" by filing a notice of removal once he or she has become a party to the litigation via proper service of process. Indeed, the majority of post-*Murphy Bros.* decisions have rejected the first-served defendant rule. *See Piacente*, 362 F. Supp. 2d at 389-90; *see also id.* at 386-90 (discussing other reasons in favor of rejecting the first-served defendant rule). The Court adopts the *Piacente* court's rationale and finds that the last-served defendant is the wiser choice, especially where, as here, the first-served defendant has not appeared in either the New York action or the federal suit.

Applying the last-served defendant rule, Lothian's Notice of Removal would be timely served as it was filed within thirty days after Lothian was served. Accordingly, the Court finds that the Notice of Removal is timely under § 1446(b).[8]

---

[8] Although not raised by any of the parties, it appears that the result would be the same under 28 U.S.C. § 1452 and Bankruptcy Rule 9027(a)(3). *See Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 661 (4th Cir. 1985) (holding that "so long as one defendant meets the thirty-day requirement [under Bankruptcy Rule 9027(a)(3)], the bankruptcy removal petition would be timely").

**II.     *Lothian, as a Third-Party Defendant, Could Remove this Action***

In their reply brief, Plaintiffs assert for the first time that the removal of this action by Lothian, a third-party defendant, was improper because "[a] majority of courts of appeal that have ruled on the question have held that third party defendants may not remove a case to federal court."  (Pls.' Reply at 5 (citing cases).)  All of the cases relied upon by Plaintiffs, however, pertain to 28 U.S.C. § 1441(a), entitled "Actions removable generally" which provides, in pertinent part, as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the *defendant or the defendants*, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

28 U.S.C. § 1441(a) (emphasis added).  Thus, the majority view Plaintiffs are referring to is based on a plain reading of § 1441(a) which refers only to removal by "the defendant or defendants," and not third-party defendants.  *See, e.g.*, *FirstBank Puerto Rico v. Gittens*, 466 F. Supp. 2d 614, 620 (D. Ct. V.I. 2006).

As recognized by these cases, however, "this interpretation of 'the defendant or defendants' is bolstered by the use of more expansive terms in other removal statutes" such as 28 U.S.C. § 1452(a), *First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 463 (6th Cir. 2002), which provides that "[a] *party* may remove any claim or cause of action . . . [related to a bankruptcy case]."  28 U.S.C. § 1452(a).  Thus, in contrast to § 1441(a), courts permit third-party removal in bankruptcy cases under § 1452(a), finding that its plain language grants removal power to any

"party." *See Palisades Collections, LLC v. Shorts*, 552 F.3d 327, 333 (4th Cir. 2008) ("Congress has shown the ability to clearly extend the reach of removal statutes to include counter-defendants, cross-claim defendants, or third-party defendants, *see* 28 U.S.C. § 1452(a)."); *First Fiscal Fund Corp. v. Fishers Big Wheel, Inc.*, 36 B.R. 299, 301 (Bankr. E.D.N.Y. 1984) ("A debtor, whether named as a third party defendant or not, possesses the right to remove a case to the bankruptcy court when the outcome of the main action might possibly affect its estate."); Thomas B. Bennett, *Removal, Remand, and Abstention Related to Bankruptcies: Yet Another Litigation Quagmire!*, 27 Cumb. L. Rev. 1037, 1052-53 (1996-97) (summarizing bankruptcy cases allowing third-party removal).

Accordingly, the Court finds that Lothian, as a third-party defendant, was permitted to remove this action to federal court under § 1452.

III.    *Subject Matter Jurisdiction and Abstention*

Plaintiffs argue that remand is warranted because the Court must abstain from exercising jurisdiction over their claims against North Fork pursuant to 28 U.S.C. § 1334(c)(2). Plaintiffs' jurisdictional arguments are directed solely at the main action and they do not argue that the Court lacks jurisdiction, or should abstain, over the third-party action. Nonetheless, Plaintiffs summarily request the Court to remand the entire action and urge that should the Court decline to do so, it should at least remand Plaintiffs' claims against North Fork. For the reasons that follow, the Court remands Plaintiffs' claims against North Fork only.

A.    *Jurisdiction Over Bankruptcy Claims*

As discussed above, third-party defendant Lothian removed this action pursuant to 28 U.S.C. § 1452(a), the bankruptcy removal statute. Pursuant to this statute, "[a] party may

remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334, in turn, grants the federal district courts original jurisdiction over all cases "under title 11 of the United States Code," 28 U.S.C. § 1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," *id.* § 1334(b). Thus, under § 1334, district courts have subject matter jurisdiction when the proceedings are: (1) "under" title 11; (2) "arising under" title 11; (3) "arising in" a title 11 case; and (4) "related to" a title 11 case. *Id.* § 1334.

The first three categories are referred to as "core" proceedings. 28 U.S.C. § 157(b) provides a non-exclusive list of matters that Congress considered to be within the bankruptcy court's core jurisdiction. These proceedings are directly related to a bankruptcy court's central functions, for example, motions to terminate the automatic stay in bankruptcy and confirmations of bankruptcy plans. *See* 28 U.S.C. § 157(b)(2)(G) and (L). Bankruptcy judges have the authority to hear and determine all core proceedings and may enter appropriate orders and judgments. *Id.* § 157(b)(1). Presumably, North Fork Bank's third-party claims against the debtor Lothian and its CEO Ransom are core, as they are claims directly against the bankruptcy estate.[9]

The last category, viz. "related to" a title 11 case, involves the broadest grant of jurisdiction as an action is considered "related to" a bankruptcy proceeding if the outcome of the litigation "might have any 'conceivable effect' on the bankruptcy estate," or has "any significant

---

[9] Plaintiffs do not dispute that the third-party claims are core proceedings.

connection with the bankrupt estate.'" *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (quoting *In re Turner*, 724 F.2d 338, 340-41 (2d Cir. 1983)). As to non-core proceedings related to a case under title 11, the bankruptcy judge may only submit proposed findings of fact and conclusions of law to the district court, which will finally determine the matter. 28 U.S.C. § 157(c)(1).

### B.    *Mandatory Abstention*

Pursuant to 28 U.S.C. § 1334(c)(2), non-core, related-to proceedings are subject to mandatory abstention so long as certain prerequisites are met. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Thus, a party seeking mandatory abstention must demonstrate that:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; [and] (6) that action can be "timely adjudicated" in state court.

*Trs. of Masonic Hall and Asylum Fund v. PriceWaterhousecoopers LLP*, 2009 WL 290543, at *4 (S.D.N.Y. Feb. 6, 2009). "A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." *In re Refco, Inc. Sec. Litig.*, 2008 WL 1827644, at *11 (S.D.N.Y. Apr. 21, 2008) (citation and internal quotation marks omitted).

Plaintiffs argue that the Court must abstain from exercising jurisdiction over the

main action pursuant to § 1334(c)(2)[10] because "the claims of Plaintiff[s] against [North Fork] do not arise under Title 11 and this Court would not otherwise have had jurisdiction over [these claims.]" (Pls.' Mem. in Supp. at 5.) They also assert that Plaintiffs' claims against North Fork can be timely adjudicated in the New York state court. (*See Id.*) Plaintiffs do not otherwise address the relevant six-prong standard set forth above.

In response, North Fork maintains that mandatory abstention does not apply because Plaintiffs' claims are core (and thus do not meet the third requirement set forth above)[11] and because § 1334 does not provide the only basis for federal jurisdiction over the main action as diversity jurisdiction is present (and thus the fourth requirement is not satisfied). Lothian, on the other hand, concedes that Plaintiffs' claims against North Fork are non-core but argues that mandatory abstention does not apply given, inter alia, the "close connections" between Plaintiffs' non-core claims and the Lothian bankruptcy. (Lothian's Mem. in Opp'n at 11.) Like North Fork, Lothian also asserts that § 1334 is not the only basis for federal jurisdiction over the main action.

In analyzing Plaintiffs' request for mandatory abstention, the Court begins with a discussion of whether or not Plaintiffs' claims against North Fork are core, as core claims are not subject to mandatory abstention. For the reasons set forth below, the Court find that Plaintiffs's claims are non-core and thus Plaintiffs have satisfied the third element for mandatory abstention.

---

[10] Although Plaintiffs memorandum in support of remand cites to § 1334(c)(1), which pertains to discretionary abstention, Plaintiffs later clarify that this citation was in error and that they intended to cite § 1334(c)(2), the mandatory abstention provision.

[11] *See In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002) (mandatory abstention does not apply to core claims).

### 1.     *Plaintiffs' Claims Against North Fork are Non-Core*

Plaintiffs argue that their claims against North Fork are non-core and thus subject to mandatory abstention. North Fork contends that Plaintiffs' claims are core and thus mandatory abstention is inapplicable. A brief review of the allegations in the Complaint, as well as the Third-Party Complaint to the extent relevant to an understanding of Plaintiffs' claims in the main action, is presented below.

### a.     *The Complaint*

The Complaint alleges that plaintiff Lead LP is a limited partnership and plaintiff Frio Lead is a limited liability company and the general partner of Lead LP.. (Compl. ¶ 1.) On June 6, 2006, Lead LP opened an account at defendant North Fork Bank - Winchester Branch. (*Id.* ¶ 3.) The opening of the account was accomplished by the execution of a signature card by two authorized agents of Lead LP, viz. Ransom and Michael Raleigh ("Raleigh"). (*Id.*) That signature card expressly provided that withdrawals from the account required the signatures of both Ransom and Raleigh. (*Id.*) The initial deposit in that account was in the amount of $2.8 million.

Thereafter, Plaintiffs allege, North Fork Bank improperly allowed $2,626,724.58 to be withdrawn from the Lead LP account without the signature of Raleigh. (*Id.* ¶ 4.) Specifically, on June 6, 2006, the same day the account was opened, the amount of $126,724.58 was improperly withdrawn from the Lead LP account and transferred to the account of Seismic Exchange Inc. at the Capital One, NA Bank in Houston, Texas pursuant to a written request for such transfer signed by Ransom only. (*Id.* ¶ 4A.) Raleigh did not sign or authorize the withdrawal in any way. (*Id.*)

On July 10, 2006, $700,000 was withdrawn from the Lead LP account without the signature or any authorization of Raleigh or "to Plaintiffs knowledge, the written authorization of anyone." (*Id.* ¶ 4B.)

On July 14, 2006, $1,800,000 was improperly withdrawn from the Lead LP account based on a written request signed by Ransom only. (*Id.* ¶ 4C.) Again, Raleigh did not sign or in any way authorize the withdrawal. (*Id.*)

Lead LP reported these allegedly unauthorized withdrawals to North Fork Bank and demanded the return of its monies, but none of the funds have been repaid. (*Id.*) The Complaint asserts claims for violations of N.Y. U.C.C. § 3-404, breach of contract, and negligence.

**b.**     ***The Third-Party Complaint***

On June 19, 2007, six days after Lothian's bankruptcy filing, defendant North Fork Bank filed a Third-Party Complaint against Ransom and Lothian, alleging that from June 6, 2006 to July 14, 2006, Ransom, the CEO of Lothian, had North Fork Bank "perform certain transactions on behalf of Lead LP . . . by use of his signature" (Third-Party Compl. ¶ 7) even though Ransom knew he was not authorized to sign for these transactions on behalf of Lead LP without the accompanying signature of Raleigh. (*Id.* ¶ 8.) North Fork Bank alleges that it reasonably relied upon the signatures made by Ransom and, as a result, completed the transactions. (*Id.* ¶ 9.)

The Third-Party Complaint asserts claims for conversion, indemnification and contribution, payment by mistake, and unjust enrichment, all of which are contingent upon North Fork being found liable to Plaintiffs.

### c.    *Plaintiffs' Claims Against North Fork are Non-Core*

"Claims that clearly invoke substantive rights created by federal bankruptcy law necessarily arise under Title 11 and are deemed core proceedings." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006).  In addition, "proceedings that, by their nature, could arise only in the context of a bankruptcy case" are core.  *Id.* at 109; *see also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) ("Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function.") (citation and internal quotation marks omitted).  On the other hand, as noted above, an action is considered "related to" a bankruptcy proceeding and non-core if the outcome of the litigation "might have any 'conceivable effect' on the bankruptcy estate,' or has "any significant connection with the bankrupt estate.'"  *In re Cuyahoga Equip. Corp.*, 980 F.2d at 114 (quoting *In re Turner*, 724 F.2d at 340-41).

Here, Plaintiffs' claims against North Fork for the alleged unauthorized withdrawal of funds from Plaintiffs' North Fork account, which were commenced before Lothian filed for bankruptcy, involve purely state law claims between nondebtors sounding in tort and contract.  They are not claims that invoke substantive rights created by federal bankruptcy law nor are they claims that would be incapable of existence absent the bankruptcy case.  *See Cent. Vt. Pub. Serv. Corp. v. Herbert*, 2002 WL 32882362, at *5 (D. Vt. Oct. 3, 2002) ("[M]atters involving relief between two nondebtors may fall under a bankruptcy court's 'related to' jurisdiction [as opposed to core jurisdiction]."); *In re New 118th LLC*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) ("The cause of action did not arise under title 11, and did not arise in this

bankruptcy case. It is a garden-variety state law claim between non-debtor parties.").  Although it is true that any liability imposed upon North Fork in connection with Plaintiffs' claims may give rise to an indemnification claim by North Fork Bank against the debtor Lothian, in the Court's view, that merely suggests that Plaintiffs' claims might have a conceivable effect on the Lothian estate and are thus, at best, related-to, non-core matters.  *See In re Brook Mays Music Co.*, 363 B.R. 801, 810-11 (Bankr. N.D. Tex. 2007) (finding that the "contingent indemnification claims that the Defendants have against the Debtor" should plaintiffs prevail in their action were non-core matters).  That is to say, Plaintiffs' claims are not rendered core merely because they may have some impact on the Lothian estate.

North Fork seeks to avoid this result in two ways.  First, North Fork asserts that it is "undisputed" that most of the monies improperly withdrawn from the Lead LP account by Ransom, to wit, $1,901,364.00, went directly to purchase gas field leases in West Cowden, Texas (the "West Cowden Property").  (North Fork Mem. in Opp'n at 4.)  As a result, North Fork has filed a proof of claim in Lothian's bankruptcy proceeding asserting a lien on the West Cowden Property under a constructive trust theory.  (*Id.*)  Lothian has objected to such claim.  (*Id.*)  North Fork argues that "[i]nasmuch as the allowance of [North Fork's] proof of claim is in issue and Plaintiffs cannot dispute that the bulk of money went to purchase the West Cowden Property, the adjudication of Plaintiffs' claims against [North Fork] are core because they pertain to the allowance of a claim against the estate."  (*Id.*)

Distilled, North Fork's argument is essentially that if Plaintiffs are successful in their claims against North Fork, North Fork will then pursue its claims for indemnification and contribution against Lothian, via its Proof of Claim in the bankruptcy proceeding, which if

successful, will reduce the amount of funds available to the bankruptcy estate. The Court has already rejected this argument. While North Fork's indemnity and contribution claims against Lothian, which are contingent upon Plaintiffs' claims against North Fork, could certainly have a "conceivable effect" on the Lothian estate and are therefore non-core, that does not convert Plaintiffs' state law claims into core proceedings.

Next, North Fork argues that Plaintiffs themselves put the monies in the Lead LP account, as well as the property purchased with such monies, at issue in the Lothian bankruptcy, by asserting claims against Lothian directly. In support of this argument, Lothian presents the following facts.

On February 28, 2007, before Plaintiffs filed the New York action against North Fork,[12] plaintiff Lead LP filed a state court action against Lothian and Ransom in Texas asserting claims for, inter alia, breach of fiduciary duty, fraud, conspiracy, and breach of contract based on the $2.8 million allegedly wrongfully converted from the Lead LP account at North Fork. (Affidavit of Joseph C. Savino, dated Apr. 18, 2008 Ex. H.) On June 11, 2007, two days before the Lothian bankruptcy filing, Lead LP and Lothian entered into a Release and Settlement Agreement whereby they agreed, inter alia, that any recovery by Plaintiffs in the New York action would be evenly divided between Plaintiffs and Lothian. This agreement was subsequently submitted to the Bankruptcy Court for approval, and was approved on July 16, 2007. (*See id.*) An appeal of the Order approving the settlement was filed by a third-party creditor in the Lothian bankruptcy.

On October 19, 2007, Lead LP filed a Proof of Claim in the Lothian bankruptcy

---

[12] Plaintiffs commenced the New York action on May 15, 2007.

-18-

proceeding specifically referring to the monies at issue in the New York action and also asserting a constructive trust over the West Cowden Property.  (*See id.* Ex. J.)  The Proof of Claim provides that it is a "contingent claim to be effective in the unlikely event the order approving the Settlement Agreement is reversed in appeal."  (*Id.*)   Just prior to the removal of this action on February 28, 2008, the West Cowden Property was sold for approximately $23,300,000.00, with the approval of the Bankruptcy Court, and all claims, including North Fork's claims, attached to the proceeds of the sale.  (*See id.* ¶ 13.)  Additionally, on April 15, 2008, the appeal of the Bankruptcy Court's Order approving the settlement between Frio and Lothian was dismissed by an Order of the U.S. District Judge for the Western District of Texas.  (*See* Affirmation of Grant Cook, dated Apr. 30, 2008.)  Thus, Plaintiffs' Proof of Claim is no longer effective.

Apparently, North Fork is arguing that Plaintiffs' claims against North Fork are core because the result of such claims will impact the amount the money in the Lothian bankruptcy estate as Lothian is entitled to half of Plaintiffs' recovery pursuant to its court-ordered settlement agreement with Plaintiffs.  The Court finds this argument to be without merit for essentially the same reasons as articulated above.  Although the outcome of Plaintiffs' suit against North Fork could certainly have a "conceivable effect" on the Lothian estate, that does not mean that Plaintiffs' claims against North Fork constitute core proceedings.  To the contrary, Plaintiffs' claims against North Fork are garden variety state law claims that arise wholly apart from the Lothian bankruptcy.  These claims, based on the alleged unauthorized withdrawal of funds from Plaintiffs' North Fork account, do not invoke substantive rights under the Bankruptcy Code nor are they of a nature that could only arise in the context of a bankruptcy case.

Accordingly, the Court finds that Plaintiffs' claims against North Fork in the main action are not core. Thus, although the Court has jurisdiction over Plaintiffs' claims under § 1334(b) as related to the Lothian bankruptcy, because these claims are non-core, Plaintiffs have come one step closer to proving the statutory requirements for mandatory abstention under § 1334(c)(2).

### 2. *Section 1334 Provides the Sole Basis For Jurisdiction/ There is no Diversity Jurisdiction Over Main Action*

As noted above, a party seeking mandatory abstention must demonstrate, inter alia, that § 1334 provides the sole basis for federal jurisdiction. Here, although Lothian's Notice of Removal does not invoke diversity jurisdiction, the parties in their briefs dispute whether diversity jurisdiction is present, thereby precluding the application of mandatory abstention. For the reasons stated below, the Court finds that Lothian has failed to meet its burden of establishing that diversity jurisdiction is present over the main action.

While the "'usual rule is that removability is determined from the record as of the time the petition for removal is filed[,] . . . where [the] basis of removal is diversity then diversity of citizenship must exist at [the] time [the] action was filed in state court as well as at [the] time of removal.'" *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting 14A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723, at 311-12 (1990)); *see also* 14B Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* 3d § 3723, at 311-12 (1998).

In their moving papers, absent any citation to the record or case law, Plaintiffs assert that there is no diversity of citizenship between Plaintiffs and defendant North Fork. (Pls.' Mem. in Supp. at 5 ¶ 6.) In response, North Fork points out that the Complaint filed in the New

-20-

York action alleges that plaintiff Lead LP is a limited partnership registered in Delaware with its principal place of business in Texas; plaintiff Frio Lead (the General Partner of Lead LP) is a limited liability company registered in Texas with its principal place of business in Texas; and defendant North Fork is chartered by New York State and has its principal place of business in New York. (Compl. ¶¶ 1-2.) Thus, North Fork argues, at the time Plaintiffs filed the New York action, there was complete diversity between Plaintiffs and North Fork.[13] Moreover, that diversity was not altered by the joinder of either of the third-party defendants, viz. Ransom and Lothian, who are New York citizens. (*See* North Fork's Mem. at 2 (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 66-67 n.1 (1996) (impleader of a third-party defendant who is not diverse from the plaintiff does not divest court of diversity jurisdiction).)

In their reply memorandum, Plaintiffs for the first time assert that in determining diversity jurisdiction, the Court must consider the citizenship of all of plaintiff Lead LP's limited partners. Plaintiffs submit that at the time the New York action was filed, Lead LP's limited partners were Frio Energy Partners, LP, a Texas limited partnership, and Lothian Oil Investments I, Inc., a Delaware corporation with its principal place of business in New York. (Affirm. of Michael Raleigh, dated Apr. 29, 2008, ¶¶ 2-3.) Thus, Plaintiffs contend that there is no diversity jurisdiction over the main action because at the time the New York action was filed, North Fork had its principal place of business in New York, the same state where Lothian Oil Investments I, Inc., a limited partner of plaintiff Lead LP, had its principal place of business.

---

[13] Lothian's brief in opposition, in a one-sentence argument, concurs with this assertion. (*See* Lothian's Mem. at 12 n.12 ("It appears that the Court would have also had jurisdiction over the parties in the initial complaint in the New York Action based on diversity, as North Fork is a New York banking corporation with its principal place of business in New York and plaintiffs are located in Delaware and Texas for diversity purposes.").)

Neither North Fork nor Lothian have sought permission to file a sur-reply or have responded in any way to Plaintiffs' new allegations.

Plaintiffs are correct that in determining diversity jurisdiction, the citizenship of Lead LP's limited partners must be taken into account. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) ("[D]iversity jurisdiction in a suit by or against [an artificial] entity depends on the citizenship of all of the members.") (citation and internal quotation marks omitted). Plaintiffs are therefore also correct that based on the evidence proffered in their reply papers, the Court lacks diversity jurisdiction over the main action as diversity of citizenship was not present at the time it was filed in state court.

Although "[i]t is . . . well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint," *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005), the question here is whether the Court may rely on information raised for the first time in Plaintiffs' reply papers. The Court finds it may.

As an initial matter, the new information directly responds to issues raised in North Fork's and Lothian's opposition papers. In addition, neither North Fork nor Lothian have made any claim that Plaintiffs' information is inaccurate or that they wish to submit additional evidence to refute the validity thereof. In this regard, Defendants could have moved for leave to file a sur-reply but chose not to. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) ("[I]t is hard for [plaintiff] to claim unfair prejudice now, because she could have claimed surprise in the district court and sought to file a responsive sur-reply."); *Bayway Refining Co. v. Oxygenated Mktg. and Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000)

(district court properly relied on evidence submitted with moving party's reply, where, inter alia, record showed that opposing party knew such evidence could refute its claim but "chose not to introduce any evidence" of its own). Finally, as noted above, Lothian, as the party seeking removal, bears the burden of establishing federal jurisdiction. *See CenterMark Props.*, 30 F.3d at 301. Under these circumstances, the Court will consider the information contained in Plaintiffs' reply papers in determining whether Lothian has met its burden of establishing that the Court has diversity jurisdiction over the main action. The Court finds that it has not.

**C.    *Does Mandatory Abstention Apply to the Present Case?***

**1.    *Plaintiffs Have Satisfied all Six Requirements for Mandatory Abstention***

As noted above, a party seeking mandatory abstention under § 1334(c)(2) must establish that it has met the six statutory requirements. For ease of reference, the six requirements are repeated below:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; [and] (6) that action can be "timely adjudicated" in state court.

*Trs. of Masonic Hall and Asylum Fund*, 2009 WL 290543, at *4. Here, the parties do not dispute that (1) Plaintiffs' motion to abstain was timely,[14] and (2) that Plaintiffs' claims against North Fork are state-law based. In addition, as discussed above, Plaintiffs have satisfied the third and fourth requirements in that their claims against North Fork are non-core and § 1334 provides the

_____

[14]  The Court construes Plaintiffs' motion to remand as a motion to abstain. Although Plaintiffs' Notice of Motion is entitled "Notice of Motion to Remand," Plaintiffs, in their memoranda, clearly request that the Court abstain over the entire action.

sole basis for federal jurisdiction. The fifth requirement is met as the Second Circuit has

recently clarified that "an action is commenced in state court" within the meaning of the statute

if it is filed in state court and then removed to federal court. *See Mt. McKinley*, 399 F.3d at 446-

47 (holding that § 1334(c)(2)'s mandatory abstention provision applies to removed actions).

This leaves the sixth and last statutory requirement, viz. that the action "can be timely

adjudicated[] in a State forum." 28 U.S.C. § 1334(c)(2); *see also Trs. of Masonic Hall and*

*Asylum Fund*, 2009 WL 290543, at *4.

  The only party to address this issue, albeit briefly, is Lothian. In one sentence,

and quoting *In re Global Crossing, Ltd. Sec. Litig.*, 311 B.R. 345, 349 (S.D.N.Y. 2003), Lothian

argues that although Plaintiffs' claims are non-core, "[g]iven 'the close connections' between the

parties in this action, the complexities involved in the Lothian bankruptcy, as well as the

existence of several overlapping actions pending before the Bankruptcy Court, 'th[e] intention

[of § 1334(c)(2)] simply has no application to litigation of this sort.'" (Lothian's Mem. in Opp'n

at 11.)

  In *Global Crossings*, investors who sustained losses due to the collapse in value

of the securities of Global Crossings, a corporation in bankruptcy, brought state court fraud

actions against the corporation's  stockbrokers, who recommended the stock, and its founder.

311 B.R. at 346-47. Defendants removed the cases to federal court, asserting that there was

federal jurisdiction under § 1334(b) because the cases were "related to" Global Crossings's

bankruptcy case. Plaintiffs moved the court to remand and abstain. *Id.* at 347.

  The court found that it had federal jurisdiction over plaintiffs' claims as related to

the bankruptcy proceeding because the "possibility that litigation against an officer of a bankrupt

corporation could lead to a claim against the corporation for contribution based on the wrongdoing of other corporate employees would certainly have a 'conceivable effect' on the bankrupt estate." *Id.* Although plaintiffs' claims were non-core, the court nonetheless found mandatory abstention to be inapplicable as plaintiffs' claims could not be "timely adjudicated" in state court. The court explained:

> [T]he *WorldCom*[15] decision is instructive. The court there rejected the plaintiff's "naked assertion" that the removed action could be more quickly adjudicated in state court, finding that the complexity of the actions, and the overlapping motion practice and discovery that would ensue from the pendency of separate federal and state litigations, would undermine any chance of the required "timely adjudicat[ion]" in state court. 293 B.R. at 331.
>
> . . . .
>
> [Plaintiffs' evidence that their cases can be quickly disposed of in state court] provide [no] reason to doubt that in this case, as in *WorldCom,* resolution of the complex issues asserted by plaintiffs in their fraud claims will be anything but speedy, and indeed that the pendency of multiple proceedings in multiple jurisdictions will contribute to slowing down the resolution of the Global Crossing claims in any court.
>
> . . . .
>
> In short, § 1334(c)(2) is intended to require federal courts to defer to the state courts to handle lawsuits which, although "related to" a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court. Far from promoting "timely adjudicat[ion]" of plaintiffs' claims, to remand here would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this

---

[15] *In re WorldCom, Inc., Secs. Litig.*, 293 B.R. 308, 317-24 (S.D.N.Y. 2003).

Court.

*Id.* at 348-49.  Other cases have followed suit.  *See, e.g.*, *Krys v. Sugrue*, 2008 WL 4700920, at *10 (S.D.N.Y. Oct. 23, 2008) (finding that plaintiffs failed to demonstrate that their claims could be timely adjudicated in state court where "plaintiffs claims, which in the New York litigation required a nearly 300-page complaint to address, are far from elementary and involve precisely the web of deceit at issue in the Refco Securities MDL[16] [a multidistrict securities litigation case]"); *Bondi v. Grant Thornton Int'l*, 322 B.R. 44, 50 (S.D.N.Y. 2005) (finding that because removed action was "but one piece of a much larger, extremely complex litigation puzzle," "plaintiff ha[d] failed to show that th[e] action [could] be 'timely adjudicated' in the state court"; "In other complex bankruptcy-*cum*-securities fraud multidistrict litigations, judges in this district have found that remand to a state court would not promote timely adjudication.");

In considering whether the matter before the Court can be timely adjudicated in state court, the Court examines the issues involved in this action.  Plaintiffs' six-page complaint alleges that North Fork allowed unauthorized withdrawals to be made from Lead LP's bank account and thereby violated N.Y. U.C.C. § 3-404, breached its contract with Lead LP, and acted negligently.  As opposed to the cases cited above which found mandatory abstention to be inapplicable – complicated cases intertwined with complex bankruptcy proceedings as well as other complex proceedings in federal court – there is nothing here to indicate that allowing Plaintiffs' claims to proceed in state court would complicate and slow down the resolution of this or any other case.  Plaintiffs' claims against North Fork are not "but one piece of a much larger, extremely complex puzzle."  *Bondi*, 322 B.R. at 50.  To the contrary, Plaintiffs' claims present

_____

[16] *In re Refco, Inc. Secs. Litig.*, 2008 WL 1827644 (S.D.N.Y. Apr. 21, 2008).

straightforward, stand-alone allegations that have nothing to do with the Lothian bankruptcy. Accordingly, the Court finds that the rationale applied in *Global Crossings* does not apply to Plaintiffs' claims. Given that there is nothing to indicate that Plaintiffs' garden-variety state-law claims cannot be timely adjudicated in state court, the Court finds that Plaintiffs have satisfied all six requirements for mandatory abstention under § 1334(a).[17]

**2.    *The Court Will Remand the Main Action Only and Transfer the Third-Party Action to the United States District Court for the Western District of Texas, Midland Division***

**a.    *The Main Action is Remanded***

The Court has found that although it has jurisdiction over Plaintiffs' claims against North Fork under § 1334(b) as related to the Lothian bankruptcy, it must abstain from exercising jurisdiction over such claims under § 1334(c)(2). However, that does not answer the question as to whether the Court should remand only the main action or remand the action in its entirety, i.e., the main action *and* the third-party action.

Without citation to any authority, Plaintiffs maintain that if the Court "does not remand this entire case to the New York State Court[, it] must [at the very least] abstain from hearing Plaintiff[s'] claims against North Fork . . . ." (Pls.' Mem. in Supp. at 5.) Similarly, Lothian argues that "[a]t a minimum, removal of the Third-Party Action is warranted as North Fork has already consented to such removal (as well as transfer of the action), and . . . the claims are arising in . . . the Lothian bankruptcy proceeding." (Lothian Mem. in Opp'n at 12.)

---

[17] Plaintiffs' citation to *Abbatiello v. Monsanto Co.*, 2007 WL 747804, at *3-5 (S.D.N.Y. Mar. 8, 2007) is inapposite as that case involved an exception to the mandatory abstention rule, to wit, unliquidated personal injury tort claims against the bankrupt estate, that is not applicable to the instant action.

This case was removed pursuant to 28 U.S.C. § 1452(a), which provides in relevant part:

> A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). According to this provision, "[a] party may remove *any* claim or cause of action." *Id.* (emphasis added). As explained by one court:

> This indicates that removal under this provision is not an all-or-nothing proposition. Section1452 permits a party to remove only *some* of the claims or causes of action and to leave the remainder for litigation in the other forum. It alternatively permits a party to remove *all* of the claims or causes of action, thereby depriving the other forum of any jurisdiction over them unless and until they are remanded.

*In re Northwood Flavors, Inc.*, 202 B.R. 63, 67 (Bankr. W.D. Pa 1996) (citing *In re Princess Louise Corp.*, 77 B.R. 766, 771 (Bankr. C.D. Cal. 1987) (noting that § 1452 provides flexibility to the removing party that is not available for the non-bankruptcy removal to federal district court")).

Given the flexibility afforded to removals under § 1452(a), the Court finds that the fact that it is required to abstain over the main action does not require remand of the third-party action as well.

### b.       *The Third-Party Action is Transferred*

By letter filed March 3, 2008, Lothian requested permission to move to transfer this action to the United States District Court for the Western District of Texas, Midland Division, for referral to the United States Bankruptcy Court for the Western District of Texas,

Midland Division, where the Lothian bankruptcy is pending.[18]  (Docket no. 3.)  This matter was

held in abeyance pending the Court's decision on Plaintiffs' motion to remand.  North Fork does

not oppose Lothian's request to transfer venue.  (*Id.*)  In fact, as noted above, on November 28,

2007, the Bankruptcy Court granted North Fork's motion to modify the automatic stay,

permitting North Fork to prosecute its third-party claims against Lothian in the New York action.

This order further provided that North Fork could not contest the removal or transfer of this

action.

Accordingly, on consent, the Court hereby transfers the third-party action to the

United States District Court for the Western District of Texas, Midland Division, for referral to

the United States Bankruptcy Court for the Western District of Texas, Midland Division.

### *CONCLUSION*

For all of the above reasons, Plaintiffs' motion to remand is GRANTED to the

extent the main action, viz. Plaintiffs' claims against defendants North Fork Bank and North

Fork Bank - Winchester Branch, is remanded to the Supreme Court of New York, Suffolk

County.  Plaintiffs' motion is DENIED to the extent Plaintiffs sought remand of the third-party

action.

The third-party action is hereby transferred to United States District Court for the

Western District of Texas, Midland Division, for referral to the United States Bankruptcy Court

---

[18]  The District Court for the Western District of Texas has a Standing Order of
Reference, pursuant to 28 U.S.C. § 157(a), for all bankruptcy cases and proceedings arising in or
related to a case under Title 11.  *See* 28 U.S.C. § 157(a) ("Each district court may provide that
any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or
related to a case under title 11 shall be referred to the bankruptcy judges for the district.").

for the Western District of Texas, Midland Division.

Upon remand and transfer, the Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: March 11,  2009
      Central Islip, New York           /s_____
                                         Denis R. Hurley,
                                         United States District Judge